PRINCESS ANNE HILLS CIVIC LEAGUE, INC.

V.

SUSAN CONSTANT REAL ESTATE TRUST, ET AL.

Record No. 910145

JOHN SALOP, ET AL.

V.

PRINCESS ANNE HILLS CIVIC LEAGUE, INC., ET AL.

Record No. 910146

January 10, 1992

Present: Carrico, C.J., Compton, Stephenson, Whiting, Lacy and Hassell, JJ., and Poff, Senior Justice

54

*James C. Howell (Palmer S. Rutherford, Jr.; Willcox & Savage*, on briefs), for appellant. (Record No. 910145)

*Stephen M. Smith* for appellee Susan Constant Real Estate Trust. (Record Nos. 910145 and 910146)

No brief or argument for appellees John Salop, Robert E. Hoffman, Louis C. Schmidt, Jr. and Nancy Schmidt (Record No. 910145)

*William R. Wahab* for appellants. (Record No. 910146)

No brief or argument for appellee Princess Anne Hills Civic League, Inc. (Record No. 910146)

JUSTICE STEPHENSON delivered the opinion of the Court.

In this appeal, we decide who are the beneficial owners of a certain parcel of waterfront land and whether a certain deed shall be declared null and void.

## I

In this chancery cause, John Salop, Robert E. Hoffman, Louis C. Schmidt, Jr., and Nancy Schmidt (collectively, Salop), by bill of complaint, and Princess Anne Hills Civic League, Inc. (the Civic League), by cross-bill, sought to have the trial court set aside and declare null and void a certain deed from the Civic

League to Susan Constant Real Estate Trust (the Trust). The deed, dated January 16, 1978, purported to convey certain waterfront property in the City of Virginia Beach. The cause was referred to a commissioner in chancery who reported, *inter alia*, that the conveyance was valid and the Trust had good title to the property. The trial court confirmed the commissioner's report, and these appeals ensued.

## II

In 1968, Crystal Lake Development Corporation (the Developer), pursuant to its development scheme for the Princess Anne Hills Subdivision, recorded plats of the subdivision in the Clerk's Office of the Circuit Court of the City of Virginia Beach. In addition to the platted lots, the plats designated certain "parcels," some of which were reserved as an appurtenance to specifically numbered lots. Parcel A in Section D of the subdivision, a parcel of waterfront land, was designated on a plat. However, a notation on the plat provided that Parcel A "will be transferred to Strattons Creek Club, a corporation, for recreation facilities."

The Developer's principals, called as witnesses on behalf of the Trust, testified unanimously that Strattons Creek Club, and thus Parcel A, was reserved for the recreational and social benefit of all the subdivision property owners, irrespective of the location of their lots. Although the Strattons Creek Club never was organized, no change of beneficiary of or purpose for Parcel A ever was made, and all lots were conveyed pursuant to the reservation. Without the use of Parcel A, a number of lots in the subdivision have no access to Strattons Creek.

The Civic League is a Virginia nonstock corporation, chartered in 1967. Its purpose is to promote the general welfare of the residents of Princess Anne Hills Subdivision, Sections A, B, C, and D, and of Princess Anne Hills Park.

On June 20, 1977, a decree was entered in the Developer's receivership cause ordering the conveyance of various parcels designated and reserved on the subdivision plats, including Parcel A in Section D. The decree directed that those parcels reserved for the benefit of specifically-numbered lots be conveyed to a trust for the benefit of the owners of the lots enumerated. With respect to Parcel A in Section D, however, the court decreed that the legal title thereto be transferred to the Developer's receiver

with the power and authority to execute such Deed or other instruments as may be required to sell and convey title to said property to the Princess Anne Hills Civic League, Inc., in consideration of said Grantee assuming responsibility for the payment of all real estate taxes and penalties due on said parcel, together with the costs of such transfer and conveyance[.]

By passage of a motion at its 1977 annual meeting, held on February 13, 1977, the Civic League was authorized to take title to Parcel A "for the benefit of all property owners." Thereafter, by deed dated September 30, 1977, the Developer, acting by and through its receiver, conveyed Parcel A to the Civic League. Thereupon, Parcel A became its sole asset.

On January 16, 1978, Marvin G. Hollenbeck, owner of Lot 6, Section D, took a deed to the home of Joseph Crawford, then the new president of the Civic League, for Crawford's signature. This deed purported to convey Parcel A to the Trust. Prior to the day he went to Crawford's home, Hollenbeck never had discussed with Crawford the transfer of Parcel A. When Hollenbeck arrived at Crawford's home, he told Crawford that the attorney who had prepared the deed had asked him, Hollenbeck, to "come over and get [Crawford's] signature." Thereupon, without any authorization by the Civic League's board of directors or members, Crawford signed the deed.

The deed from the Civic League to the Trust merely stated that the Trust was "an entity which will manage the parcel for the use and benefit of the owners of the lots entitled." Although the Civic League took title to Parcel A for the benefit of all subdivision property owners, the declaration of trust recited that the Civic League desired to convey Parcel A "for the benefit of the owners of Lots 1 through 8, inclusive, Princess Anne Hills Park, Section D, in order to preserve the boat docking privileges and for the payment of taxes and expenses."

The Civic League's 1978 annual meeting was conducted on February 18, 1978. Although Hollenbeck, his wife, and Clemens, another subdivision lot owner, testified that the matter of the transfer of Parcel A to the Trust was mentioned at the meeting, they conceded that no vote by the membership ever was called for or taken concerning the transfer. If any minutes of the meeting ever existed, they were not produced.

## III

The trial court, confirming the commissioner's report, ruled that Salop and the Civic League were barred from prosecuting this suit by the doctrines of laches and estoppel. The commissioner made the following factual findings to support his conclusion:

> More than eight years passed between the time that the Deed was executed and recorded . . . and this suit was instituted. During that time, Joe Crawford, the past president of the Civic League, died and the minutes of the Civic League's 1978 meeting disappeared. Also, during that time, the property in question was maintained in an open and obvious manner by the Defendant Marvin G. Hollenbeck; and, the Trust paid the City real estate taxes on the property. In February of 1978, the Defendant Hollenbeck reimbursed the Civic League for real estate taxes that the Civic League paid on the property during the period of time the Civic League owned the property.

## A

Laches is the neglect or failure to assert a known right or claim for an unexplained period of time under circumstances prejudicial to the adverse party. *Masterson* v. *Board of Zoning Appeals*, 233 Va. 37, 47, 353 S.E.2d 727, 735 (1987). When a chancellor considers the defense of laches, he does not apply an absolute rule, as is the case with a statute of limitations, but must determine each case in light of its particular circumstances. *Bartsch* v. *Bartsch*, 204 Va. 462, 468, 132 S.E.2d 416, 420 (1963). The burden of proving laches is upon the party who asserts it. *Morris* v. *Mosby*, 227 Va. 517, 521-22, 317 S.E.2d 493, 496 (1984).

The record does not support the conclusion that the Trust has been prejudiced by Crawford's death or by the disappearance of the minutes of the Civic League's 1978 annual meeting. The details surrounding the execution by Crawford of the deed to the Trust were known and fully related by Hollenbeck. Thus, Crawford's testimony, had it been available, would have been, at most, cumulative. Similarly, if minutes of the 1978 annual meeting of the Civic League ever existed, their production in evidence could

not have strengthened the Trust's case because the Trust concedes that no vote by the membership was taken regarding Parcel A.

With respect to Hollenbeck's having maintained Parcel A and paid minimal real estate taxes thereon, the record does not disclose such actions as would indicate that he was asserting rights of ownership over the property. More importantly, the Trust has not been prejudiced by any delay by Salop or the Civic League in asserting their claims.

## B

■ The elements necessary to establish equitable estoppel are (1) a representation, (2) reliance, (3) change of position, and (4) detriment, and the party who relies upon estoppel must prove each element by clear, precise, and unequivocal evidence. *Dominick* v. *Vassar*, 235 Va. 295, 298, 367 S.E.2d 487, 489 (1988). Because the doctrine of estoppel prevents the showing of the truth, it is applied rarely and only from necessity. *Hyson* v. *Dodge*, 198 Va. 792, 795, 96 S.E.2d 792, 795 (1957); *Baker* v. *Preston*, 21 Va. (Gilmer) 235, 300 (1821).

■ Relying upon the same factual findings as previously set forth, the trial court confirmed the commissioner's conclusion that Salop and the Civic League were estopped from maintaining this suit. We do not agree. The record is devoid of any evidence tending to prove any of the elements of equitable estoppel.

■ In sum, we hold, as a matter of law, that the evidence is insufficient to support a finding that the claims asserted by Salop and the Civic League are barred either by laches or by equitable estoppel.[1]

## IV

■ Turning to the merits of the case, we first determine whether Parcel A was reserved for all subdivision lot owners or just the owners of Lots 1 through 8 in Section D. The record clearly establishes that the Developer intended Parcel A to be held for the benefit of all the lot owners. This was the undisputed testi-

---

[1] We do not consider the Trust's contention that the Civic League lacked standing to maintain its cross-bill for the following reasons. First, the issue was not raised by the Trust's pleadings. *See, e.g., Bank of Giles County* v. *Mason*, 199 Va. 176, 180, 98 S.E.2d 905, 907 (1957). Second, the issue was not referred to the commissioner; only the question of Salop's standing was referred to the commissioner.

mony of the Developer's principals and is consistent with the intent expressed in the notation on the subdivision plat. Moreover, in the receivership proceeding, the chancellor recognized this intent when he directed that Parcel A be conveyed to the Civic League, while, at the same time, directing that parcels reserved for the benefit of specifically numbered lots be conveyed to a trust for the benefit of the owners of such lots. Finally, the Civic League, at its 1977 annual meeting, by recorded vote of its members, accepted Parcel A "for the benefit of *all* property owners." (Emphasis added.)

From this undisputed evidence, we hold that the Civic League held Parcel A for the benefit of all subdivision property owners.

## V

Next, we determine whether the deed from the Civic League to the Trust, signed by Crawford at the behest of Hollenbeck, was a valid transfer. The Civic League contends that the transfer was an *ultra vires* act, and therefore void, because the Civic League failed to comply with the provisions of former Code § 13.1-246,[2] which reads, in pertinent part, as follows:

A sale . . . or other disposition of all, or substantially all, the property and assets of a corporation may be made upon such terms and conditions and for such consideration . . . as may be authorized in the following manner:

(a) Where there are members having voting rights, the board of directors shall adopt a resolution recommending such sale . . . or other disposition and directing that it be submitted to a vote at a meeting of members having voting rights, which may be either an annual or a special meeting. Notice stating that the purpose, or one of the purposes, of such meeting is to consider the sale . . . or other disposition of all, or substantially all, the property and assets of the corporation shall be given to each member entitled to vote at such meeting, in the manner provided by this Act for the giving of notice of meetings of members . . . . At such meeting the members may authorize such sale . . . or other dis-

---

[2] The Civic League cites present Code § 13.1-900 which is the successor to and substantially the same as former Code § 13.1-246. However, the latter was the applicable law at the time of the purported conveyance in 1978.

position and may fix, or may authorize the board of directors to fix, any or all of the terms and conditions thereof and the consideration to be received by the corporation therefor. Such authorization shall require the vote of more than two thirds of the votes entitled to be cast by members present or represented by proxy at such meeting.

■ Thus, pursuant to former Code § 13.1-246, a nonstock corporation was without authority to dispose of all, or substantially all, of its property and assets unless the following measures were taken. First, the board of directors was required to adopt a resolution recommending such disposition and directing that the matter be submitted to a vote at a membership meeting. Second, prior notice of the time, place, and purpose of the meeting had to be given to the members. Finally, the disposition of the property had to be authorized by a vote of more than two-thirds of the members present or represented by proxy.

■ It is undisputed that the Civic League did not comply with any of the requirements of former Code § 13.1-246 before the purported transfer of Parcel A to the Trust. Consequently, the Civic League's president had no authority to execute the deed on behalf of the Civic League to the Trust.

■ We have said that when a contract of a corporation is *ultra vires* in the proper sense, *i.e.*, beyond the powers conferred upon it by the legislature, it is not only voidable, but wholly void and of no legal effect. *Norton Grocery Company* v. *Bank*, 151 Va. 195, 202, 144 S.E. 501, 502-03 (1928). In the present case, however, the act of the Civic League was not beyond the powers conferred upon it by the General Assembly because the Civic League was empowered to dispose of its property provided it complied with the statutory requirements. Consequently, because the Civic League merely failed to do properly what it had the power to do, we conclude that the purported transfer of Parcel A to the Trust was not void, but voidable.

## VI

■ Unlike a void act, a voidable act may be the subject of ratification. *See Crump* v. *Bronson*, 168 Va. 527, 537, 191 S.E. 663, 667 (1937). The Trust contends that the Civic League ratified the transfer at its 1978 annual meeting. We do not agree.

The record shows that, even if the matter of the transfer was discussed at the meeting, no vote by the membership ever was taken. Additionally, we find no merit to the Trust's assertion that the Civic League somehow ratified the transfer by the "acquiescence of [its] membership" or the membership's "absence of dissent." Clearly, the record does not support this assertion.

## VII

For the reasons stated, we hold as follows:

1. The claims of Salop and of the Civic League are not barred by the doctrines of laches or equitable estoppel.

2. The purported conveyance of Parcel A by the Civic League to the Trust was not authorized pursuant to the requirements of former Code § 13.1-246 and was not ratified thereafter by the Civic League. Therefore, we declare the conveyance to be null and void and of no effect. Thus, the deed from the Civic League to the Trust, dated January 16, 1978, recorded in the Clerk's Office of the Circuit Court of the City of Virginia Beach in Deed Book 1748, at page 456, will be set aside.

3. The legal title to Parcel A is vested in the Civic League and held by it for the benefit of all subdivision lot owners, including but not limited to the owners of Lots 1 through 8 in Section D.

Accordingly, we will reverse the trial court's judgment and, consistent with the views expressed herein, remand the cause with directions that an appropriate deed be executed and recorded reconveying Parcel A to the Civic League.

*Reversed and remanded.*