# CIRCUIT COURT OF FAIRFAX COUNTY

Joanne T. Leon et al.

v.

Mary M. Martin et al.

November 3, 2009

Case No. CL-2008-12578

BY JUDGE CHARLES J. MAXFIELD

Plaintiffs, Joanne Leon, Joseph Bridges, Joel Harris, and Dan Alexander (Alexander) (*pro se*) assert that Leon, Bridges, and Harris are the true governing Board of Directors of The Seniors Coalition, Inc. (TSC), a nonstock corporation. Defendants Mary Martin, Isaiah Kelly, Richard Millard, Rose Ayana, Alice Haddow, Chris Millard, and Mac Haddow (Haddow) (*pro se*) assert that Martin and Kelly represent the true Board of TSC. The case turns on the legal effect of amended bylaws of the corporation dated January 19, 1996. For the reasons that follow, the Court finds Joanne Leon, Joseph Bridges, and Joel Harris to be the Board of Directors of TSC.

*Factual Background*

TSC is a non-profit corporation chartered in Virginia to advocate its members' issues of interest to Congress. Fifteen years ago, two different boards of directors litigated for control of the corporation. See *Stewart v. Lady*, 251 Va. 106, 465 S.E.2d 782 (1996). This struggle resulted in Stewart,

Carlen, and Pearson being declared the governing board of TSC. Before and after this litigation, the actual control of TSC rested with Dan Alexander (the founder of TSC) and his friend Mac Haddow. These men found members to serve on the board of directors and orchestrated annual board meetings. Both men were vendors of TSC and, accordingly, had a large financial interest in the corporation.

In an effort to avoid a repeat of the 1996 power struggle, Haddow and Alexander agreed to create voting members of TSC who would have veto power over all board appointments and board decisions. By placing trusted people on this voting member "super board," Alexander and Haddow attempted to prevent a rogue board from usurping the corporation from them. The original articles of incorporation of TSC, adopted in 1990, did not allow for voting members. On January 19, 1996, the board adopted amended articles of incorporation and bylaws removing the prohibition against voting members. These amended bylaws named Rose Fasso (now Rose Ayana) and Chris Millard as the Voting Members. The Virginia State Corporation Commission did not certify the Articles of Restatement for the amended articles and bylaws until June 20, 1996.

On May 1, 1996, the Voting Members executed either a resignation appointing Alice Haddow and Faye Alexander as the Voting Members or executed a document stating that they would resign effective at such time that Alice Haddow and Faye Alexander requested they do so. The genuine document is in question but not necessary to this decision.

For the next ten years, Ayana and Millard, as voting members, shadowed the Board of Directors' decisions, always approving them. They did this without the knowledge of Alexander, the Chairman of the Board of Directors, and a majority of its members. By the Spring of 1996, the Board of Directors had five members: Stewart, Carlen, Martin (Chairman), Bridges, and Kelly. Haddow was directing the activities of the Voting Members and preparing their minutes. On at least three occasions, the Voting Members approved the Board of Directors' actions before the Board met. The Voting Member "Super Board" had become a trump card maintained by Haddow unbeknownst to Alexander who was far less involved in corporate formalities.

In September 2006, Haddow and Alexander had a falling out, and the Board split into two factions. Each faction purported to be the true Board of TSC. Current Board Members Leon and Bridges are clearly aligned with Alexander and maintain that Harris is also a properly elected Board member. Leon, Bridges, and Harris proceeded to conduct Board business and removed

Martin and Kelly from the Board in 2007. Voting Members Rose Fasso and Richard Millard[1] are aligned with Haddow and in May 2007 removed Leon and Bridges from the Board. If [this] ain't [a mess], it'll do till the mess gets here." Cormac McCarthy, *No Country for Old Men* (Vintage Books 2005).

Plaintiffs brought this case as an equitable action for declaratory judgment to determine who the true Board of TSC is - Leon and Bridges,[2] or Martin and Kelly. Other claims against Haddow, Alexander, Board Members, and Voting Members were stayed pending a resolution of the governance issue. Alexander and Haddow, both attorneys, were permitted to participate *pro se* as they took the position that evidence introduced in the hearing on the governance issue would affect their rights in subsequent litigation.

## Analysis

The crux of this case is whether the restated articles of incorporation and bylaws adopted by the Board in January 1996 were void or voidable. If this Court decides that the amendments were void then the actions by the Voting Members, in fact the mere existence of the Voting Members, will be invalidated from their very inception. If the decision is that the amendments were voidable then the Voting Members' existence and actions could be found to be ratified.

The Virginia Nonstock Corporations Act requires that a corporation wishing to restate its articles of incorporation must file the restated articles with the Virginia State Corporation Commission ("SCC"). Va. Code Ann. § 13.1-889(D), (E) (2009). Once filed, the restated articles are only effective when the SCC issues a certificate of restatement, and, at that point, the previous articles of incorporation are superseded. *Id.* The statute is clear that a corporation may not begin to act under restated articles of incorporation until such articles are officially certified by the SCC. See also W. Fletcher, *Cyclopedia of the Law of Private Corporations*, § 3721 (Perm. ed. 1997) ("If the statute requires filing or registration of the amendment [of the articles of incorporation] in some public office, such provision must be complied with, and if an amendment is required to be filed with the secretary of state, no rights can be claimed under amendments that have not been filed. . . .").

---

[1] Richard Millard replaced Chris Millard as the second Voting Member.

[2] If their board actions are found to be lawful, the Leon and Bridges Board also includes Ryder and Harris.

The Virginia Nonstock Corporations Act also states that bylaws may contain provisions for the management of the corporation as long as such bylaws are *not inconsistent with the articles of incorporation.* Va. Code Ann. §§ 13.1-823, 13.1-826 (Repl. Vol. 2006) (A corporation may make and amend bylaws so long as they are not inconsistent with the articles of incorporation). When a bylaw conflicts with the articles of incorporation, the articles will trump the bylaw and the bylaw will be considered void. W. Fletcher, *Cyclopedia of the Law of Private Corporations,* § 4189 (Perm. ed. 1997).

Article III of the original TSC articles of incorporation expressly prohibited the election of voting members. Furthermore, Virginia law does not permit voting members without express authorization in the articles of incorporation. Va. Code Ann. § 13.1-846 (2006 Repl. Vol.) The restated articles in this case were not filed until January 19, 1996, and were not approved by the SCC until June 20, 1996. From January to June 1996, TSC's original articles of incorporation were still in effect. This rendered the restated bylaw creating and appointing the voting members void because it was in direct conflict with Article III of the original articles of incorporation which prohibited the creation of voting members.

Defendants argue that the restated bylaw allowing for the creation and appointment of Voting Member is a voidable act rather than a void one. In support of this argument, Defendants cite to *Kappa Sigma Fraternity, Inc. v. Kappa Sigma Fraternity,* 266 Va. 455, 587 S.E.2d 701 (2003). The *Kappa Sigma* case involved a dispute between the Kappa Sigma fraternity and a foundation formed by the fraternity as a separate Virginia nonstock corporation. A central argument in the case was whether an act by the foundation was void or voidable. The disputed act occurred when the foundation voted to amend its articles of incorporation, but the action was never ratified by the foundation's members as was required by internal corporate guidelines. *Id.* at 460-61. The Virginia Supreme Court stated that what distinguishes a void act from a voidable one is whether or not the corporation had the power to do that act in the first place. *Id.* at 465. In *Kappa Sigma,* the court found that the foundation's act was voidable because it had the statutory power to amend its articles of incorporation, it just failed to follow its internal requirements for approval of the amendments. *Id.* at 466.

*Kappa Sigma* is distinguishable here because the appointment of voting members creates a void rather than a voidable act. The 1990 Articles of Incorporation explicitly prohibited the appointment of voting members in TSC. Section 13.1-846 of the Virginia Code reinforces this prohibition. In 1996, TSC attempted to restate its articles to allow for the appointment of voting members, but in order for those restated articles of incorporation to be

effective and, therefore, allow for voting members, the SCC had to certify them. This means that the bylaw adopted by TSC in January 1996 was in direct conflict with the articles in control at the time because the restated articles of incorporation did not take effect until June 1996. It follows that, if bylaws in direct conflict with a corporation's articles are void, then the bylaw provision for voting members was void as it was in direct conflict with the articles of incorporation. See Va. Code Ann. § 13.1-823 (Repl. Vol. 2006). Accordingly, unlike in *Kappa Sigma*, TSC did not have the statutory power to amend its bylaws in January of 1996.

At oral argument, Defendants contended that the restated articles and bylaws were ratified because TSC continued to operate normally for ten years after passing the amended articles and bylaws in 1996. It is possible for acts of a corporation to be ratified by future corporate actions, but in order for ratification to take place the corporation had to have the authority to authorize the action in the first place. 18B Am. Jur. 2d, § 1410 (2004). Ratification cannot be used to revive a void corporate act. *Princess Anne Hills Civic League v. Susan Constant Real Estate Trust*, 243 Va. 53, 413 S.E.2d 599 (1992); *Crump v. Bronson*, 168 Va. 527, 191 S.E. 663 (1937). Because this Court finds that TSC's bylaw appointing voting members was void as it is in conflict with the TSC's original articles, it is not subject to ratification, and Defendants' ratification argument fails. The only way that the restated bylaw could become valid would have been if TSC had re-adopted it after the restated articles became effective on June 20, 1996. See *Powers v. Marine Engineers' Beneficial Assoc.*, 52 Cal. App. 551, 199 P. 353 (1921) ("[I]t cannot be held that such custom or usage, consisting in the repeated compliance with the provision of a by-law admittedly invalid at its adoption, can take the place of compliance with the statutory requirements.").

Defendants' final argument is that this suit is barred by the statute of limitations. In support of their argument, they point to *Kappa Sigma* which found that a statute of limitations defense applies to a voidable act. *Kappa Sigma*, 266 Va. at 466. Because the court finds that TSC's actions were void rather than voidable, this argument fails.

In the alternative, Defendants could have argued that the equitable doctrine of laches applies to bar this suit, but, based on the pleadings now before the Court laches, does not apply. In order for laches to apply, there must be prejudice. *Stewart*, 251 Va. at 114. The burden of proving prejudice is on the party asserting the defense. *Id.* Defendants have shown no prejudice in the timing of this suit; the doctrine of laches will not act as a bar in this case.

*Conclusion*

Ironically, this Court reaches the same conclusion that the Virginia Supreme Court reached in *Stewart*. Attempting to change the composition of the Board of Directors without statutory authority is ineffective and cannot be ratified. Accordingly, the legal Board of Directors is to be determined without reference to the acts of the Voting Members and thus consists of Leon, Bridges, Ryder, and Harris.